Filed 3/20/13  P. v. Bonson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>TRAVIS RYAN BONSON,<br><br>　　　　Defendant and Appellant. | A136551<br><br>(Lake County<br>Super. Ct. No. CR927291) |

Defendant Travis Ryan Bonson was charged with committing a lewd and lascivious act upon his daughter, a child under the age of 14. (Pen. Code, § 288, subd. (a).)[1] He entered a no contest plea pursuant to an agreement that his sentence would not exceed three years in state prison. The court ordered a diagnosis pursuant to section 1203.03 to aid its assessment of whether defendant, who is a veteran with posttraumatic stress disorder, should be granted probation. (§§ 1170.9, 1203.03.) The court reviewed the psychological report, denied probation, and sentenced defendant to three years in prison. Defendant appeals, contending that the trial court wrongly failed to order a psychiatric evaluation pursuant to section 288.1 and to properly consider his request for probation as a veteran and improperly imposed a fine and fee without determining his ability to pay the charges. We find no error and shall affirm the judgment.

## STATEMENT OF FACTS

Defendant faced a maximum sentence of eight years in state prison for lewd and lascivious conduct. (§ 288, subd. (a).) He agreed to plead no contest in exchange for a

---

[1] All further statutory references are to the Penal Code except as noted.

1

"3 year lid." Defendant was advised that, as a consequence of his plea, he could be placed temporarily at a diagnostic facility for psychological assessment (§ 1203.03) or evaluated by a psychologist (§ 288.1). Initially, the court referred the matter to the probation department for preparation of a sentencing report without ordering a psychological assessment.

The probation department recommended a three-year state prison term based on police findings that defendant had touched his daughter's vaginal area on numerous occasions and had, as a teenager, molested his two sisters when they were children. In summarizing the state of defendant's physical health, the probation report noted that "The Department of Veterans Affairs has determined the defendant is 70 percent disabled due to posttraumatic stress disorder, which he incurred while on active duty in Iraq."

The probation report was submitted to the court at a sentencing hearing conducted several months after defendant's no contest plea. At the hearing, defense counsel raised the issue of defendant's service-related mental condition and asked for a psychological evaluation under section 288.1 to consider defendant's suitability for probation and outpatient sex offender treatment. The court asked counsel if there was any evidence that defendant's crime was committed as a result of defendant's posttraumatic stress disorder. Defense counsel replied "I don't know that we understand fully the implications of posttraumatic stress disorder, what its manifestations might be and whether or not it might be a relevant factor in this case. I think that's why I'm asking for the report."

The prosecutor opposed defendant's request for a psychological evaluation and urged imposition of a prison sentence. The prosecutor said defendant was offered a three-year prison term, the lowest available for a child molester, partly in recognition of defendant's military service. The prosecutor argued that any claimed connection between defendant's posttraumatic stress disorder and acts of child molestation was "undercut by the fact that there was evidence in the probation report that this behavior began when he was 12 or 13 when he did things that were similar to . . . the underlying offense . . . to his sisters who I think were seven or eight at the time. So this is something . . . that he did before he went to Iraq." The prosecutor also argued that any consideration of defendant's

2

posttraumatic stress disorder would also have to weigh the likelihood that the disorder adversely affects defendant's ability to control his pedophilic behavior, making prison over probation the preferred disposition.

The court concluded that "a just disposition of the case requires a referral to the Department of Corrections and Rehabilitation for a [diagnosis] and recommendation by that agency" under section 1203.03. In response to defense counsel's request for a section 288.1 report as well, the court said the section 1203.03 report would address defendant's posttraumatic stress disorder and "if down the road I need a [section] 288.1 report, I can get it." Sentencing was continued to a future date.

Two psychologists evaluated defendant pursuant to section 1203.03. They conducted a mental status examination, interviewed defendant, and reviewed documents that included the Department of Veterans Affairs Decision for Service-Connected Compensation. The psychologists submitted a ten page report describing their findings. They reported that defendant's posttraumatic stress disorder arose from his tour of duty on the Kuwait-Iraq border in 2003 to 2004, where he served as a Marine truck driver in ground support. In addition to defendant's posttraumatic stress disorder, the psychologists also noted that he struggles with depression predating his military service and has a chronic history of substance abuse dating back to age 12. Defendant's "ongoing pattern of behavior" that included sexual abuse of his sisters and daughter was found to be "suggestive of pedophilia" but not conclusive. The psychologists noted concerns that defendant minimized his acts of child molestation. They concluded that defendant's symptoms are best "explained by his depressive disorder" but also noted that "[i]t is not clear if he ever met the full criteria for a major depressive episode as his concurrent history of substance abuse make[s] the etiology of his symptoms difficult to determine." The psychologists reported that for defendant "to be successful on probation it will be extremely important for him to secure and maintain the appropriate treatment for not only for his pedophilic behavior, but also for substance abuse, [post-traumatic stress disorder], and depressive symptoms." The probation department prepared a supplemental report following the diagnostic evaluation that continued to recommend a prison sentence.

After reviewing the section 1203.03 report and the probation reports, the trial court denied probation. The court stated: "Probation is denied primarily because of the serious nature of the molestation of his very young daughter over a lengthy period of time and because of the dangers he does present to others." The court imposed a three-year prison term and various fines and fees. Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court was required to order a psychological study under section 288.1 before denying probation to a veteran suffering from posttraumatic stress disorder. Defendant is mistaken.

A person convicted of violating section 288(a) may not have his sentence suspended and probation granted unless the court orders a diagnostic evaluation "pursuant to Section 1203.03, or similar evaluation by the county probation department." (§ 1203.067, subd. (a)(1).) The court must also "[c]onduct a hearing at the time of sentencing to determine if probation of the defendant would pose a threat to the victim." (§ 1203.067, subd. (a)(2).) [2] The court shall "order any psychiatrist or psychologist appointed pursuant to Section 288.1 to include a consideration of the threat to the victim and the defendant's potential for positive response to treatment in making his or her report to the court. Nothing in this section shall be construed to require the court to order an examination of the victim." (§ 1203.067, subd. (a)(3).)

Section 288.1 provides: "Any person convicted of committing any lewd or lascivious act" upon "a child under the age of 14 years shall not have his or her sentence suspended until the court obtains a report from a reputable psychiatrist, from a reputable psychologist . . . as to the mental condition of that person." "The obvious intent of the Legislature in enacting this statute was to protect society by requiring a psychiatric or psychological report insuring that defendant is a suitable candidate for probation." (*People v. Thompson* (1989) 214 Cal.App.3d 1547, 1549.) A section 288.1 "report is not

---

[2] See also section 1203.066, subdivision (d)(1) [probation limitations for resident child molester].

4

mandated in every lewd or lascivious act case. Only if the trial court is inclined to grant probation must a report be ordered." (*Ibid.*) Where the court, after reviewing the facts of the case, "does not feel that probation is proper, then there is no duty to request a section 288.1 report." (*Ibid.*) Nor does section 1203.067, subd. (a)(3) require the trial court to order a diagnostic evaluation before denying probation. Diagnostic evaluations of sex offenders are prerequisite to a grant of probation but are not prerequisite to a denial of probation. (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1531-1532.)

A defendant's status as a veteran with posttraumatic stress disorder does not alter the analysis. A sentencing court properly considers a defendant's status as a veteran with a service-related disability when considering whether to grant probation (§ 1170.9, subd. (d)) but is not required to order specialized psychological tests before reaching a disposition. Section 1170.9 provides: "(a) In the case of any person convicted of a criminal offense who could otherwise be sentenced to county jail or state prison and who alleges that he or she committed the offense as a result of . . . post-traumatic stress disorder . . . stemming from service in the United States military, the court shall, prior to sentencing, make a determination as to whether the defendant was, or currently is, a member of the United States military and whether the defendant may be suffering from . . . post-traumatic stress disorder . . . as a result of that service. The court may request, through existing resources, an assessment to aid in that determination. [¶] (b) If the court concludes that a defendant convicted of a criminal offense is a person described in subdivision (a), and if the defendant is otherwise eligible for probation and the court places the defendant on probation, the court may order the defendant into a local, state, federal, or private nonprofit treatment program for a period not to exceed that which the defendant would have served in state prison or county jail, provided the defendant agrees to participate in the program and the court determines that an appropriate treatment program exists."

In enacting section 1170.9, the Legislature's intent "was not to expand probation eligibility, but only 'to ensure that judges are aware that a criminal defendant is a combat veteran with these conditions at the time of sentencing and to be aware of any treatment

programs that exist and are appropriate for the person at the time of sentencing if a sentence of probation is appropriate.' " (*People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1093, quoting Stats. 2006, ch. 788, § 1(g), italics omitted.) The statutory requirements were met here.

Defendant did not expressly allege in the words of section 1170.9 that he "committed the offense as a result of . . . post-traumatic stress disorder . . . stemming from service in the United States military" but raised the issue obliquely by saying that his service-related mental condition "might be" a "relevant factor" in the commission of his offense and requesting a section 288.1 psychological assessment to explore that possibility and defendant's suitability for probation. Arguably, this triggered the court's obligation to make a determination prior to sentencing "as to whether the defendant was, or currently is, a member of the United States military and whether the defendant may be suffering from . . . post-traumatic stress disorder . . . as a result of that service." (§ 1170.9, subd. (a).) In making that determination, a court "may request, through existing resources, an assessment to aid in that determination." (*Ibid.*) Section 1170.9 does not *require* a court to order a psychological evaluation under section 288.1, section 1203.03, or any other provision but simply permits the court to use "existing resources" to obtain "an assessment to aid" its determination. Here, the court chose to order a section 1203.03 diagnostic study which confirmed defendant's service-related posttraumatic stress disorder. The court considered defendant's military service and mental condition when sentencing him but, ultimately, decided upon substantial evidence that a prison sentence was warranted given the severity of the crime and public safety concerns. The court was not required to order a section 288.1 assessment before denying probation, nor did it abuse its discretion in proceeding here without one.

We also reject defendant's contention that he was entitled to a section 288.1 psychological assessment as a term of his plea bargain. Defendant signed a written plea form that expressly states "open plea with 3 year lid" and lists only one promise he received in exchange for his plea: a sentence of "up to 3 years in state prison." A

psychological evaluation under section 288.1 was noted as a possible consequence of his plea but the advisement was not a promised term of the bargain.

Also unavailing is defendant's contention that the trial court improperly imposed fines and fees without a determination of his ability to pay. At issue is a fine of $1,230 imposed upon defendant as a child molester (§ 290.3) and a $90 booking fee (Gov. Code, § 29550, subd. (c)). Defendant did not object to the charges when they were imposed, which leads the People to argue that he has forfeited any claim that he cannot pay them. The California Supreme Court is presently considering whether forfeiture applies in such circumstances. (*People v. McCullough* (2011) 193 Cal.App.4th 864, review granted June 29, 2011, S192513.)

Assuming the claim was preserved for appeal, it fails on the merits. "The court's finding of the defendant's present ability to pay need not be express, but may be implied through the content and conduct of the hearings." (*People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1398.) In considering whether there is sufficient evidence of an ability to pay, we "consider a defendant's future prison wages in their entirety as well as the possibility of employment upon defendant's release from prison." (*People v. Gentry* (1994) 28 Cal.App.4th 1374, 1377.) Defendant was 32 years old at the time of sentencing. He is a high school graduate and veteran who, following his honorable discharge from the Marines in 2004, has worked as a welder, utility line mapper, pipe fitter, and store clerk. He is a certified fork lift operator. Defendant told the probation officer that his service-related mental disability limits the type of work he can do but defendant has worked since his partial disability was established in 2007. He had a monthly income of $2,700 at the time of sentencing consisting of a $1,600 disability payment and $1,100 in earnings. The record supports the implied finding that defendant has the ability to pay the challenged $1,320 in fines and fees from his prison wages and future employment income following his release.

7

# DISPOSITION

The judgment is affirmed.

_____\
Pollak, J.

We concur:

_____\
McGuiness, P.J.

_____\
Siggins, J.